I thought you were going to sit there quietly, but if you're ready, we're ready. Or maybe it's better to come on up and get it over with. No time like the present, they say. And Mr. Burke? Okay, good. Take your time setting up. Mr. O'Connor, on behalf of the plaintiff appellant, you may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Ryan O'Connor with Akerman here on behalf of Raymond Berthiaume. With me today are my co-counsels Dale Knoll and Hugh Koerner. Your Honors, Mr. Berthiaume, when he appeared for his trial against the city of Key West, all he was seeking and all he expected was the same thing that anybody expects when they appear for a trial, and that's to have a fair trial before an impartial jury. Now, unfortunately for Mr. Berthiaume, the trial that he received was anything but fair and impartial. There were two critical errors that occurred during the jury selection process that essentially gave Mr. Berthiaume this unfair trial. The first of which was the district court's refusal to ask Mr. Berthiaume's proposed voir dire question in which he sought to ensure that the jury that would hear his case would not have any biases or prejudices against a gay person like Mr. Berthiaume. The second error was the district court allowing the city to strike two jurors who Mr. Berthiaume recognized as being gay. If I could ask you at some point during your argument to explain on the second issue what record evidence supports your view that those two jurors were gay. Certainly, Your Honor. At some point. But just to address the first issue first, and I will certainly get to the Batson issue, when we're talking about the proposed voir dire question that the judge refused to ask, you have to keep in mind what kind of case this was. We're talking about a case in which the plaintiff, Mr. Berthiaume, is a gay man, and in a case where the fact that he is gay will be made known to the jury explicitly numerous times over. It was virtually impossible for Mr. Berthiaume to present his case, or for the city for that matter, to present his defense without informing the jury several times that Mr. Berthiaume is gay, that he is married to another man who is also one of the witnesses, that he was formerly romantically involved with a different man who is also one of the witnesses, and that Mr. Berthiaume and his three companions were all down in Key West celebrating at fantasy fests, attending gay bars, things of that nature. All of these facts would be explicitly before the jury. And on top of all of that, we're talking about a case in which Mr. Berthiaume, the entire purpose of the trial was for Mr. Berthiaume to prove that he was wrongfully arrested. What he was arrested for was domestic violence against another man. That was the city's entire position. The entire reason they say that they had probable cause for this arrest is because they believed that he had committed domestic violence against someone who they assumed was his romantic partner. Now, of course, that was incorrect. Mr. Berthiaume was dating Mr. Villa at the time. But the fact of the matter is this is a case in which issues of homosexuality permeated every aspect of the case. Did the district court give any reason why it refused to give the voir dire question? The judge did not, Your Honor. When Mr. Berthiaume submitted his proposed question, the judge considered it and essentially went out of his way not to ask the question. After reading the proposed question, the judge sort of made these general... generally advised the jury to be fair to everyone, no matter their background, but did not mention homosexuality in any way. And what this court has held in the Bates case just a few years ago, when it looked at facts nearly identical to this, is that when you have a case like this, when you have a case in which the issues of homosexuality permeate the case and are going to be before the jury, the judge has to ask that question. I want to make sure I understand the factual background. You proposed 23 written voir dire questions to start in writing. Is that correct? That's correct, Your Honor. And this question was not there? No, it wasn't. It was in the supplemental question that was... I understand. I just want to walk through what happened. And did the court give all 23 of those that you all asked for? Your Honor, I don't recall how many of those questions were... I don't believe that he gave all of them, no. But did you object to any... you filed written questions, right? That's correct. And then the court covered certain ones? Right. And there was no objection for failure to cover any other questions? That's correct, Your Honor. All right. And then the defendant sent in three voir dire questions, right? I believe so, yes. Okay. And then on the day of trial, that's all pretrial? The questions were sent in pretrial? Correct. Okay. So then on the day of trial, the jurors are there, and it looks like there are six people in the box, and so the judge starts asking the questions? Right. Okay. And so it goes on and on, and there are several jurors that are questioned and accepted. At least some of them were accepted, right? That's correct. Okay. And then I think you got down to juror number six, and then there were some questions there. And it was only after one of them was struck that you asked for this question? After there was somebody excused? Your Honor, I've... It seems like it was at the end of the voir dire that y'all were asking. We want to go back and ask this. Are you prejudiced or have any bias? Your Honor, forgive me. I'm not sure exactly when that occurred, but I do know that the judge solicited these supplemental questions. He, on the record, without being asked to, urged the parties to submit any type of supplemental voir dire question. Is this during the middle of the voir dire? Yes, Your Honor. Okay. And he asked the attorneys to write it down on the yellow legal pad and to give it to the bailiff who would give it to the judge. And that's what Mr. Berthiaume's attorney did. And why did he do that? I assume just to... What caused that to happen? Your Honor, I don't know that the record really explains that. My understanding is that the judge knew that he was essentially controlling the voir dire himself. The attorneys weren't going to have an opportunity to ask any questions that they wanted to ask, and so he wanted to give them at least this chance while they were there in the courtroom to ask anything else that they would like to ask. Did the attorneys get to ask any follow-up questions at all on any issues, putting these issues aside? They did not, Your Honor. The judge did not give the attorneys a chance at all to ask any questions directly to the jurors. And that's really, frankly, part of the problem here. We don't dispute that the judge had discretion to conduct his voir dire how he would like, but we're talking about an issue so critical as juror prejudice against someone who is gay, which this court has recognized that there will be someone on virtually every jury who has those type of prejudices, that Mr. Berthiaume should be given at least a chance to ask the question. Go ahead. Why wasn't it in your initial questions, and it was so much a part of the case? Why didn't you put that in the original 23 questions? Your Honor, I don't know that the record really answers that question, but what I do know is that this... No, it just answers it wasn't there. Correct. It was so critical. Why wouldn't you have it in the original question? I don't know if it was an oversight, or the record doesn't really explain that, Your Honor, but the point is, at least what the Ninth Circuit has found in the United States v. Inequa, is that the fact that the question was submitted is enough to preserve the issue. Judge Gilman, I think... Did you raise this as a ground in your motion for new trial, that he failed to give the vorteer a question you requested? Your Honor, I'm not sure, but as I mentioned, I do know that the fact that it was submitted as a proposed question is enough. It doesn't have to be raised in any other kind of motion or any... But I just noted in the motion for... In denying the motion for new trial, he just slowly focuses on the Batson preemptory challenge issue. He doesn't address whether his failure to give the question you requested in vorteer. Right. You don't know whether you raised it or not in your motion for new trial? Your Honor, I'd have to go and review the record again, but I do know that the issue was before the court. It was raised sufficiently to preserve the issue, and the judge was aware that this was an issue. It was raised in the pleadings, the fact that Mr. Berthiaume and his companions were gay. It was certainly raised when the proposed question was submitted, and it was raised when the Batson challenge was made. It was made explicitly clear to the judge that we're talking about parties who are gay here. So the court was on notice. It knew that this was an issue. And something so critical, it was vital that the court at least ask the question. Could you, in the little time you have left, turn to the question I had asked before? Certainly, Your Honor. In terms of what on the record shows that these witnesses are gay, what the courts have all held is that when looking at the first prong of Batson, that prong is not an onerous one. That's what the courts have said. All you have to do is present enough information to raise an inference of discrimination. Now, what Mr. Berthiaume's counsel did, with the very little opportunity that the judge allowed him to present his challenge, was to say, Your Honor, my client is gay, all of his companions are gay, the city just struck the only two witnesses who are gay. And the reason that they knew that was based on his observations of the jurors and based on the fact that one of them said that he was in a domestic relationship. Wait, wait, wait. You're saying that you guys were stereotyping as well? No, Your Honor. I wouldn't say stereotyping, but when we're talking about something that's non-obvious, just like a juror who, when we're talking about religion, something that you cannot pick up on, it's not explicit, you have to just go with what you have. And that's precisely the reason that you need to have some type of inquiry to... Well, I know. I know all of that. But it seems to me that these two jurors were in different factual circumstances. One, you might have an inference. The other one, I forget which was which. There's almost nothing to indicate that he or she was gay. Your Honor, I understand that. And I recognize that I'm over my time. No, you can go ahead and answer the question. That all speaks to the underlying problem here, and that's that the judge didn't allow... I know, but you're trying to bleed that other issue into this one. You have a separate, stand-alone Batson claim. Right. And in order for you to succeed on that claim, one of the first things you have to establish is that these two jurors belong to a category that deserves some sort of protection. Correct, Your Honor. My question is, what evidence in the limited record you were able to develop shows, or leads to an inference, that these two individuals were gay? Your Honor, aside from what I just said, the information that I pointed out is all there is. But the fact of the matter is, the only reason that there wasn't more was because the judge didn't allow an opportunity to inquire. And what the Second Circuit held in Jordan v. Lefebvre is that the refusal to allow an opportunity to develop... What did you want to inquire? Say, what is your sexual orientation? Is that what you wanted to ask the juror? Is that what you... Perhaps in so many words, yes, Your Honor. I mean, there's certainly a delicate way to ask the question. The Ninth Circuit in the Smith-Kline case recognized that prudent courtroom procedure could ensure that there's no one outed unnecessarily or against their will. So... So you think that it's a violation if a court says, we're not going to ask people's orientation, they're just jurors, they're down here. Why do you need to know their sexual orientation? Forget about the other issue. I'm just curious. Is that you're entitled to ask that question? It seems like a very personal question to have to ask jurors. Your Honor, I agree it's personal, and that's why the courts would have to be very prudent with the way that they go about having this type of inquiry. But it's no different than asking about a person's religion. That's also a very personal thing. It's not obvious, but under Batson we know that's the type of inquiry you get to have if you want to make sure that the jurors are not improperly stricken. So there has to be some type of procedure. Judge Keem seemed to be reluctant to allow you to ask that type of personal question. That's correct, Your Honor. So he went on about saying you're not to be prejudiced by the witness, by any considerations dealing with their race, their gender, their whatever, whatever their background, their religion. Those things are basically immaterial. Correct. You don't think that was enough instruction to the jury? No, it's not, Your Honor. In fact, that's what this court held in the Bates case, that it's not enough to just give a general admonition. You have to specifically ask about this type of prejudice. Your argument is not just that it helps with regards to cause challenges but also allows you to exercise your peremptory challenges in a meaningful way. You may have someone who says that he or she can be fair, but if they also say that they have a bias against those individuals who are gay or lesbian, you might choose to not believe that juror's first statement and choose to exercise a peremptory challenge against them. Correct, Your Honor. It goes to the heart of the matter, which is you need to know these types of answers just to understand the type of jury that you have. I have a record question about after you asked to be able to ask the jurors were they bias or prejudice. The district court said, that's all I'm going to ask. The other requested suggestions are denied. I will not ask. I have in my notes that trial counsel did not object following the denial of that request. That's correct, Your Honor. Okay, during the voir dire. Correct. But it wasn't necessary. Exactly. I don't know whether it was necessary or not. You asked a bunch of questions. He'd given a bunch of questions, and you added this other question. Is it record 36-37 of the voir dire? Correct. And there's no objection? That's correct. Okay. No request for mistrial. There's no, well, we object to your failure to give that request. All you've got to do is file the request, and the district court, you give 20. If there's one the district court doesn't give, you preserve the errors, the one they didn't give, without telling the district court I object, and I think that's . . . That's correct, Your Honor, and it's because the judge conducted . . . Tell me what case says that. It's from the Ninth Circuit, United States versus . . . How about the Eleventh Circuit? Your Honor, I . . . I'm talking about whether you preserve the error or not. Your Honor, I'm not aware explicitly of any court or case from this court that has held that, but it doesn't mean it doesn't exist. That's just not what we found. Okay. Your Honor, I know I'm well over my time. No, but you're answering the court's question, so it's not a problem. Judge Gilman, do you have anything? All right, we'll hear from Mr. Burke. Thank you. Good morning. My name is Michael Burke, and I represent the City of Key West and David Smith in this matter. If I could start by trying to address some of the questions that were asked about the record and the procedures in the case. I did try the case, and in answer to your question, Judge Gilman, my recollection is that the two issues that are on appeal were the two issues that were raised in the motion for new trial. The basic background and record of this case is it was a straightforward police misconduct case. There was no pretrial motions. The defendants answered. The court had available to it, other than the complaint, which, as I recall, states that Mr. . . . Nowhere does it state that Mr. Berthamew was gay, the plaintiff Berthamew was gay, or that other people were gay. It stated that his then-partner, Mr. Villas, and his ex-partner, Mr. Jimenez. There's two references to that in the entire complaint. Other than that, it's a claim for false arrest and excessive force. The trial judge had the joint pretrial stipulation of the parties, which we have filed and made part of a supplemental appendix, no mention. This case had nothing to do with anybody's sexual orientation or sexual activity of any kind. Well, you say that . . . I think that is correct with regards to what happened, but all the background . . . His sexuality was going to come out. The fact that he was gay . . . No doubt about that. Yes. And part of the reasons why the commotion began was going to come out. That's inescapable, right, from this case? The fact that he was gay and that he'd had a relationship with the man he was chasing and he was . . . Yes. Right, that all was . . . That would come out. It's impossible for that to not have come out. It is true. So although you may be right that the reasons for the alleged actions of the officer were not tied to his sexuality, sexuality was going to become a part of this case no matter what any party tried to do or not do. Well, the fact that he was gay was going to come out. Not only that he was gay . . . Yes. But some of the explanation for some of his own conduct . . . I'm not following what you're referring to there. Who was he chasing? His ex-partner. Okay. Yeah. So it was going to come out. Yes. You don't think in a case like that it's important for a jury to be asked whether or not anyone can put that issue to the side and decide fairly? Well, I didn't object to the question, and I would have had no problem with it being asked. Certainly not. The question is whether it constitutes reversible error. I would have had no problem with it at all. This was at a Fantasy Fest event. This area of the city that was involved here, everyone knows, even if it wasn't asked. Everyone knows what this area of the city is. It's common knowledge. And Key West is an extremely tolerant area. It solicits the gay and lesbian community to visit. That doesn't mean 100% of the populace agrees. That's true. It's always possible. I mean, if the issue here is that if you have someone who is either a witness or a party who is gay, and if the trial judge does not ask the jurors about their feelings about gay people, if they have any inclination that that may come up during trial, and here it's very minimal that was provided to the trial judge, well, then, yeah, I mean, the court needs to announce that, because that's not heretofore been in any case anywhere in this country, that a specific question like that has to be asked to select a fair and impartial jury. What I'm saying, what I'm trying to give the court some sense of the record about was, in this case, the only mention of it for the judge, the judge who's being called upon to conduct this inquiry, the only mention of it is in the complaint, the word partner and ex-partner, nothing in the pretrial stipulation, no pretrial motion, no written voir dire question, and in answer to Judge Hull's question as to how the supplemental question comes up, very typical with the way Judge King and others in this district conduct voir dire, they'll conduct the voir dire, they'll ask the jurors the questions, and then the judge, based on what the jurors will say, will ask, do you have any other questions to follow up on what the jurors have said? Very typical. So that's the, you know, what is the purpose of that? So Judge King asked them, asked the lawyers, do you have something else besides what you provided me? And that's usually in response to what the jurors have said. Here, nobody has said anything about sexual orientation of any kind. This is an afterthought. This is an afterthought that he presents to the judge, and you, you know, this judge is, you're reviewing his actions for abusive discretion, and this is what he's faced with is, what does this have to do with anything? Why do you think the district judge didn't address that in denying the motion for new trial, since this was one of the two grounds raised by the plaintiff? I don't know, Your Honor. I don't have an answer for you. I'm sorry. I want to make one last point on that. There are six prospective jurors in the box, and the court had completed asking all the questions of the court's questions, and is that when the supplemental questions were asked? The way the court conducted the jury selection process, Your Honor, was there's a jury box, and then there's also, in the courtroom, the gallery like we have here, and my recollection is that there were jurors, prospective jurors seated in the box and others. He asked all of them questions, including those in the box. So they were completed? Yeah, questions completed, and... And had them write out, had the lawyers write out supplemental questions they wanted to ask? The way it worked is the jurors responded, you know, here's where I live in the Keys, this is what I do for a living, those kinds of questions, and then after all of that was done with respect to all of the jurors who had not yet been challenged, he's asked all his questions, the judge has, and all the written questions that he's going to ask, do you have supplemental questions? And that's usually in response to what the prospective jurors have said. Did you ask any supplemental questions? I did not, Your Honor. Okay, and I do note, my notes say, you didn't object to this question at all. I didn't even know about it. And that's really what I'm trying to say here. The record actually says that they hand wrote it, gave it to the judge, and he said, no, you didn't object, didn't say anything. I didn't see it. You didn't even see it. I didn't even see it. And I didn't even know about it until later, and it's not like he doesn't ask the question, and nobody says, well, Judge, here's why we need to ask that here. Because during this trial, something like this is going to occur. Nothing, nothing like that. So that's what we had occur in this case. So that's the issue number one. So as I say to you, as I read the cases, the failure to ask a specific question, one specific question, for it to form the basis of where there is clearly competent, substantial, strong evidence to support the decision the jury made, no evidence of any kind of bias or prejudice on the part of this jury, none, either in response to any of the questions that they, the information they provided in court, or thereafter with respect to these people. My understanding of that is that is an extremely limited area where an appellate court will say, your failure to ask this one question, we're going to then throw this case out. You know, there's the case, there's a Supreme Court case where a person who was a very civic, civic racial activist in the community was criminally charged with a racial-oriented crime, and in that case the Supreme Court said these unusual circumstances warrant this. But that's what Judge King had in front of him when he looked at that question and decided not to ask it. No, please, go ahead. I was going to, your question, can you tell us what the record evidence is about the two structures? What do we know? Go ahead, I'll ask mine afterwards, go ahead. Yes, Your Honor. The record evidence of that . . . Maybe if you were still on the first issue. That's okay. Okay. What is the record evidence that we know that who was struck? There were two white male jurors, Thomas Gibson and Robert Walker. Okay. They were struck, I struck those jurors. What we know about them was we know what they did . . . I can tell you everything about them because I've got it in my mind, but in terms of what their sexual orientation was, we know zip. And the only thing in the record was that Mr. Walker indicated that he was single and involved in what he termed a domestic relationship. And on the basis, after they were struck, the lawyer for the plaintiff challenged the strike, and before this court extends Batson to sexual orientation, what we've argued in our brief is the court should first determine whether they established a prima facie case because the law is clear that if there's not a prima facie case of discrimination, the trial judge is precluded to ask the lawyer as to why he or she struck the juror. And in this case, I think that's the way that should be looked at initially by the court. And there's no indication that either of these jurors was gay or heterosexual or homosexual. Except one said they were in a domestic relationship. We don't know. Why doesn't that indicate, at least prima facie, that it might have been a gay relationship? That indicates that he was living with someone who was not his wife or his spouse or his husband. That might have been true 50 years ago, but what about now? Wouldn't contemporaneously, if you have a domestic relationship, you assume it's a homosexual one? I would not assume that. But he didn't say it was his partner. I don't know. That's all we've got. Nowadays, if you're just living with a person of the opposite sex, you don't usually call them a domestic partner or a domestic relationship. He didn't call it a domestic partner. He said it was a domestic relationship. Let me ask you another one. Well, he could have said I was living with my boyfriend and my girlfriend, but he didn't. The bottom line is that what the plaintiff's lawyer is arguing here, although he did not argue it at trial, he didn't ask to go further. Earlier, with respect to the question that wasn't asked, he not only did not object to it not being asked, he didn't explain why it should be asked. Let me ask another thing that, at least in my mind, raises a suspicion that might be a prima facie case. As I recall from the record, by the time the jurors were excused for cause and the peremptory challenges by the plaintiff, there were eight jurors remaining at the time that you had your three peremptory challenges. The questioning by the judge indicated five of those eight said they were married to a person of the opposite sex. They talked about their wife, their husband, whatever. That left three jurors who the record does not identify what their sexual orientation is, and the city excused two of those three. I don't remember that. I'd have to go back and look. If Your Honor has checked it out, I'm sure it's accurate. I don't remember. If that's so, and of course, you didn't have to give justification because the judge decided the plaintiff hadn't made out his prima facie case, but why couldn't that be enough to establish the prima facie case? Well, I don't think that it would be. It would not be an abuse of discretion. It would seem to me it would be more likely that I'm discriminated against people who are single as opposed to people who are married. Well, that's speculation. We don't know that. Well, I think everything about that issue would be speculation, and that's why it would be proper for the judge. It would not be an abuse of discretion for the trial judge to say, you haven't established a prima facie case. I mean, even in the case they rely on, the case out of the Ninth Circuit, in order to establish a prima facie case, you must show that the struck juror had a sexual orientation, was gay or a lesbian. I mean, it says that. Does this show that? I mean, I would say there's the question. Did the judge give the plaintiff the opportunity to develop that or not? No, he did not. He did not. He did not, and I would suggest that that's very much in keeping with what a trial judge would do. I don't think that a trial judge is going to out a bunch of people who have not volunteered what their sexual orientation is in a public courtroom just because he's asked to in a case where it doesn't have anything to do with any aspect of the case other than the fact that a party or a witness is gay or a lesbian. That's a big if. I mean, that's a big circumstance here where there are a lot of people out there that are prejudiced against gay men. I don't know that other people on the jury weren't of a different sexual orientation than heterosexual. I don't know that, Your Honor. Well, we know that five of the eight had clearly identified themselves as married to the opposite sex. My best friend growing up, his father had five children. He later turned to be a gay man. I don't know what their history of their sexual orientation is. And I don't think it was error for the judge not to inquire upon that. Your Honor, this is a case, this was a straightforward case in which there was a dispute in the evidence. There was no discussion other than the fact it came up that there was a partner, an ex-partner. There was nothing of any salacious nature. The facts of this case are totally different than the Bates case. And, Your Honor, we would urge that this case be affirmed. Thank you. Mr. O'Connor, you reserve five minutes, sir. Thank you, Your Honors. Just to address a couple questions that were asked during my initial argument, my co-counsel has informed me that the pretrial stipulation did mention that, or it discussed in some way that this was a crime of domestic violence. So the crime that Mr. Bertheum was accused of by the city, when you're talking about domestic violence, obviously the natural interpretation of that is you're talking about someone with a familial or romantic relationship. So that should have alerted the judge in addition to the plea. Are the 23 written voir dire questions you gave pretrial in the record? They are, Your Honor. Okay. And to address, as Judge Gilman has already recognized, the voir dire question issue of when the judge refused to ask it, that was raised in the motion for a new trial. So to the extent that that's required, which it isn't, it certainly is preserved in that sense. But to go back to this court's opinion in the Bates case, the city has mentioned several times that this case didn't involve a crime of homosexuality or homosexuality was one of the elements. Neither did Bates. Bates was a criminal case that involved a criminal defendant who was charged with possession of child pornography. The prosecution did not have to prove that Mr. Bates was gay as part of its case. I mean, it was convenient for them to do so because it helped them establish Mr. Bates' control of his laptop. But possession of child pornography is not, there's no part of the elements of that crime that requires the prosecution to prove that he's gay. Bates is unpublished. Is that correct? It's unpublished, Your Honor, but it is the only example that either party has found from this court where it has looked at this issue. And when it did, it found that the district judge has to ask a question like this when we have issues of sexual orientation that permeate the case. Well, it says the sexual activities were inextricably bound up with the central element of the criminal charge against Mr. Bates. That's correct. So it wasn't an element. Because pornography had men in it. Your Honor, I don't know that the case says that the pornography had men in it. The case says that the jury was going to learn that Mr. Bates was gay based on the other evidence that the city wanted to introduce, which the city was entitled to do. I'm sorry, the prosecution in that case was entitled to do. But if it was going to, it had to ask the jury and make sure that the jury could be fair to a gay litigant like Mr. Bates. The same rationale applies here. Since Mr. Berthiaume had to inform the jury that he's gay, since the city had to inform the jury that Mr. Berthiaume is gay. I read the cases that the evidence of his sexual relationships with men, the sexually explicit photographs of himself with men on the computer and his efforts to meet men online was repeatedly paraded before the jury. That's correct, Your Honor. But keep in mind, Bates was a child pornography case. It already had a sexual connotation to it. That wasn't what we were concerned about prejudicing the jury. What this court was concerned about was the jury learning that Mr. Bates was gay. There was no question of whether the jury could be fair to someone after they've seen explicit sexual images. The concern was, if this jury is going to find out that Mr. Bates is gay, we need to make sure that they can be fair to a gay litigant. I'm just reading the case. Finally, important here, the government discovered photographs of Mr. Bates engaged in sex acts with other men on the computer, and they were putting those in evidence. That's correct, Your Honor. There was also other evidence of Mr. Bates attempting to meet other men online, things of that nature, that weren't necessarily explicitly sexual. But the fact of the matter is it was the evidence of homosexuality that was prejudicial. I think in retrospect, to me, it's like an earlier case. It would have been so easy to ask the questions. Exactly. It's just like you're asking for law enforcement. Are you biased against law enforcement? Exactly. Are you biased against this group? Are you biased against that group? To me, I would have done this a lot. I would have asked the question, particularly if you'd given them your written pretrial questions, I would have asked it. I get in a trial, and this is going on, and you've got jurors there, and then all of a sudden you want to start asking that type of question. I don't know. I think it's a good question to ask. There's nothing wrong with this weather. It's reversible error here under what happened. Because we're talking about . . . And how much the issue was in the case. It's definitely in the case, but is it so in the case that we've got reversible error? Absolutely, Your Honor. I think it's a question that's certainly valid if you're going to ask prejudice against law enforcement. And the judge asked that question. As I ask all the time. Absolutely. And the judge asked that question. Because there are a lot of people prejudiced against law enforcement, just like there are a lot of people prejudiced against people with different orientations than them. Absolutely, Your Honors. I think we have it. It's just hard. Certainly, Your Honors. And I recognize that my time is up. I'm happy to answer any more questions that the court may have. I'll just briefly conclude by saying that all Mr. Berthiaume wants is a fair trial, the same thing that everyone else is guaranteed, and we ask that this court reverse. Thank you. Thank you. We'll go back to the second case in the morning.